**Robert MONTAGUE, Petitioner-Appellant,**

v.

**Douglas VINZANT, Warden, Washington State Penitentiary and Slade Gorton, Attorney General of the State of Washington, Respondent-Appellees.**

**No. 80–3118.**

United States Court of Appeals, Ninth Circuit.

Argued Jan. 7, 1981.
Decided April 23, 1981.

Meriwether D. Williams, Winston & Cashatt, Spokane, Wash., for petitioner-appellant.

Robert E. Mack, Asst. Atty. Gen., Olympia, Wash., argued for respondent-appellees; Nate D. Mannakee, Olympia, Wash., on brief.

Before WRIGHT, POOLE and NORRIS, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Montague was arrested in January 1967 on a motor vehicle violation and a search of his car revealed marijuana. He was arraigned in February on a charge of felony possession of narcotic drugs, was convicted on April 20, 1967, and sentenced to a minimum of five and a maximum of 20 years in state prison. His conviction was upheld on appeal.

In 1969 the state legislature reclassified possession of marijuana from a felony to a misdemeanor. It subsequently authorized the State Board of Prison Terms and Parole to reduce the mandatory minimum term for persons convicted under the felony statute to not less than the minimum under the misdemeanor statute. RCW 9.95.040 note.

The Board gave Montague a three-year mandatory minimum term and placed him on parole in August 1970. His maximum sentence was not altered, and parole has since been revoked and reinstated on more than one occasion. He has not completed his sentence.

In 1978 Montague sought a writ of habeas corpus in federal court, asserting that his conviction violated equal protection for two reasons: (1) he did not benefit from the later decision of the legislature to make possession of marijuana a misdemeanor because the Washington Supreme Court determined that the change would apply ret-

roactively only to those cases still pending; and (2) Washington law vested unconstitutional discretion in the prosecutor to charge possession as either a felony of a misdemeanor. The district court denied relief.

We affirm the judgment.

## I

### RETROACTIVITY

Washington has a general "savings" statute, which provides in part:

> No offense committed and no penalty or forfeiture incurred previous to the time when any statutory provision shall be repealed, whether such repeal be express or implied, shall be affected by such repeal, unless a contrary intention is expressly declared in the repealing act . . . .

RCW 10.01.040.

In *State v. Zornes*, 78 Wash.2d 9, 475 P.2d 109 (1970), the court held the law making possession of marijuana a misdemeanor was intended by the legislature to apply to pending cases. 78 Wash.2d at 13, 475 P.2d at 113. It reversed Zornes' felony conviction because his case was pending at the time the law was changed.

Cases decided before the change in the law were not affected. The legislative intent identified in *Zornes* applied only to pending cases.

The Washington Supreme Court has upheld, either explicitly or implicitly, the "savings" statute in a long line of cases. *See, e. g., State v. Fenter*, 89 Wash.2d 57, 569 P.2d 67 (1977); *State v. Hanover*, 55 Wash. 403, 405, 107 P. 388 (1910) (on rehearing).

▪ Montague argues the distinction between decided cases and pending cases is a denial of equal protection. He did not raise this issue in his habeas corpus petition filed with the state supreme court. Under normal circumstances, the district court should not have considered the issue because he failed to exhaust state remedies. *See Car-*

*others v. Rhay*, 594 F.2d 225, 228–29 (9th Cir. 1979).[1]

Exhaustion may be excused, however, if it would be futile. *Sweet v. Cupp*, 640 F.2d 233 (9th Cir., 1981).

> The futility doctrine . . . promotes comity by requiring exhaustion where resort to state courts would serve a useful function but excusing compliance where [exhaustion] would only create an unnecessary impediment to the prompt determination of individuals' rights.

*Id.*, at 236. In light of the state court's holding in *Zornes*, and its consistent application of the "savings" statute for over 70 years, requiring exhaustion would create an unnecessary impediment to prompt resolution of Montague's equal protection argument.

The district court rejected the argument on the merits, as do we. Montague does not argue that the state was precluded from changing the crime from a felony to a misdemeanor unless it reopened every case decided under the felony statute. Rather, he argues that the distinction between pending and decided cases is irrational because those whose cases were pending at the time the law was changed may have committed the crimes *before* those whose cases, due to speedier trial and appellate proceedings, had been decided. He argues that the constitution requires that application of the new law be based on when a defendant committed the crime, instead of when his case was decided.

▪ The classification between pending cases and decided cases is not suspect and does not penalize the exercise of a fundamental right. *Cf. Linkletter v. Walker*, 381 U.S. 618, 629, 85 S.Ct. 1731, 1737, 14 L.Ed.2d 601 (1965) (no constitutional right to retroactivity of judicial decisions). It must be upheld if there is a rational basis for it. *See Vance v. Bradley*, 440 U.S. 93, 97, 99

---

1. The district court excused the exhaustion requirement because it found that the state had conceded that it had been met. There is a split among the circuits as to whether the state may waive the requirement. *See United States ex rel. Lockett v. Illinois Parole Pardon Board*, 600 F.2d 116, 117 (7th Cir. 1979). We do not consider the question because we find that exhaustion would have been futile.

S.Ct. 939, 943, 59 L.Ed.2d 171 (1979) (rational basis test).

■ Limiting the retroactive effect of the law to pending cases provides an obvious saving of judicial and law enforcement resources. This was the rule at common law, *see State v. Zornes*, 78 Wash.2d at 12, 475 P.2d at 112, and the legislature had a rational basis for adopting it here.

## II

## PROSECUTORIAL DISCRETION

Montague's second argument is premised on the assertion that the prosecutor could have charged him with a misdemeanor under the Dangerous Drug Act instead of a felony under the Narcotic Drug Act. This argument fails because the prosecutor could not have charged Montague under the Dangerous Drug Act as it then read.

The Dangerous Drug Act provided that: It shall be unlawful for a person . . . to sell, amytal, luminal, veronal, barbital, acid diethylbarbituric, or any salts, derivatives, or compounds thereof, . . . para-amino-benzene sulfonamide, sulfanilamid, sulfamidyl, prontylin, prontosil, neo prontosil, neo prontylin, edimalin, sulfonamid, . . . any amphetamine or any dextroamphetamine, . . . or any other drug which is required by any applicable federal or state law or regulation to be used only on prescription, except upon the written or oral order or prescription of a physician, surgeon, dentist or veterinary surgeon. . . .

Ch. 6, § 1, 1939 Wash. Laws 12 (1939) as amended, Ch. 24, § 1, 1955 Wash. Laws 164 (1955) and Ch. 49, § 1, 1961 Wash. Laws 1437 (1961), (repealed 1971). *See* Wash. Rev.Code § 69.40.060 (West 1962).

The legislature amended this section, effective March 21, 1967, to prohibit the sale of:

any drug found by federal law or regulation or Washington state pharmacy board regulation to have a potential for abuse because of its depressant or stimulant effect on the central nervous system or its hallucinogenic effect.

Ch. 71, § 1, 1967 Wash. Laws 320 (1967) (repealed 1971). *See* Wash.Rev.Code § 69.-40.060 (West Supp. 1980). Possession of any of the drugs included in § 69.40.060 was punishable as a misdemeanor under § 69.-40.061.

The 1969 legislature amended the Narcotic Drug Act to exclude marijuana and provided that it would thereafter be defined as a drug subject to the Dangerous Drug Act and not subject to the Narcotic Drug Act. *See* Wash.Rev.Code § 69.33.220(13), and § 69.40.110 (West Supp. 1980).

In extended dictum in *State v. Zornes, supra*, the Washington Supreme Court stated that possession of marijuana could have been prosecuted under either statute as they read before the 1969 amendments. However, the opinion indicates that the language of the 1967 amendment that included drugs with "stimulant and/or depressant effect[s]" was crucial to its decision that marijuana was covered. 78 Wash.2d at 19, 475 P.2d at 116. That language did not take effect until March 21, 1967, after Montague was charged.

■ The prescription clause of the Dangerous Drug Act, in effect at the time of the offense, did not serve to include marijuana. In *State v. Tanksley*, 78 Wash.2d 553, 477 P.2d 926 (1970) the state court ruled that the prescription clause of the Dangerous Drug Act did not bring narcotics within the statute because in enacting the Narcotics Drug Act the legislature clearly intended to regulate narcotics separately and differently. Marijuana was then classified as a narcotic. Therefore the possession of marijuana did not violate the Dangerous Drug Act in effect in January and February 1967.

■ For these reasons, Montague could not have been charged under the Dangerous Drug Act. The prosecutor had no discretion to charge Montague with a misdemeanor and there was no equal protection violation.

The judgment of the district court is affirmed.